[Nos. 11633-6-III; 12253-1-III.   Division Three.   August 3, 1993.]

*In the Matter of the Personal Restraint of*
RANDY WAYNE NESS, *Petitioner.*

THE STATE OF WASHINGTON, *Respondent,* v. RANDY
WAYNE NESS, *Appellant.*

818

*Carl E. Hueber, Christopher J. Wright, Legal Intern,* and *Winston & Cashatt,* for appellant.

*Donald C. Brockett, Prosecuting Attorney,* and *Steven J. Kinn, Deputy,* for respondent.

SHIELDS, J.[*] — Randy Wayne Ness appeals the trial court's denial of his motion to withdraw his guilty pleas to three counts of second degree burglary; he has filed a personal restraint petition as well. He contends the court erred because (1) his pleas were not knowing, intelligent, and voluntary; (2) there was an insufficient factual basis to support the pleas; (3) he had ineffective assistance of counsel; and (4) the State did not fulfill its part of the bargain. We affirm the trial court and deny Mr. Ness' personal restraint petition.

On April 19, 1988, Randy Ness pleaded guilty[1] in Washington to three counts of second degree burglary. At the time he entered his pleas in Washington, he was awaiting sentencing in Kootenai County, Idaho, on two additional convictions for grand theft arising out of related crimes. He entered his pleas in Washington pursuant to a plea agreement which provided the prosecutor would recommend a sentence at the low end of the standard range (22 to 29 months). The plea agreement also provided that his sentence in Washington would run concurrently with the sentence in Idaho.

---

[*]Judge George T. Shields was a member of the Court of Appeals at the time oral argument was heard on this matter. He is now serving as a judge pro tempore of the court pursuant to RCW 2.06.150.

[1]Mr. Ness' plea was entered pursuant to *North Carolina v. Alford,* 400 U.S. 25, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970).

The Washington prosecutor recommended sentences of 22 months on each of the three Washington counts to run concurrently with each other and the Idaho sentence. The Spokane County Superior Court followed the prosecutor's recommendation and sentenced Mr. Ness accordingly. The court in Kootenai County, Idaho, sentenced Mr. Ness to two 60-month concurrent terms, 22 months of which were determinate and 38 months of which were indeterminate. The Idaho sentences ran concurrently with the time ordered by the Washington court. Mr. Ness has served his sentences.

On June 7, 1990, Mr. Ness was charged by federal indictment with two counts of being a felon in possession of a firearm. He pleaded not guilty, proceeded to trial and was convicted by a jury on both counts. On November 9, the United States District Court for the Eastern District of Washington sentenced Mr. Ness to 360 months in federal prison, partially based on a career offender sentence enhancement that took into account his prior convictions for burglary; however, the court stayed execution of the sentence to resolve a legal question regarding his sentence. On September 3, 1991, the federal court resolved the question against Mr. Ness and ordered the sentence executed.

On October 24, 1991, Mr. Ness moved to withdraw his guilty pleas entered on April 19, 1988. The Spokane County Superior Court denied the motion, and Mr. Ness timely appealed.

In a related action, Mr. Ness on May 31, 1991, filed a personal restraint petition seeking to vacate the convictions based on the Washington guilty pleas. On March 17, 1992, Mr. Ness moved this court to consolidate his appeal with his personal restraint petition; the motion was granted, and both causes of action are now before the court.

Mr. Ness first contends that his guilty pleas were not entered knowingly, intelligently, and voluntarily for two reasons: (1) he did not understand the elements of the crimes with which he was charged; and (2) he was not informed of all the direct consequences of his plea. His arguments are not well taken.

■ 1. Understanding the Elements of the Crime. CrR 4.2(f) provides in relevant part:

The court shall allow a defendant to withdraw the defendant's plea of guilty whenever it appears that the withdrawal is necessary to correct a manifest injustice.

Under this rule, a manifest injustice is one which is "obvious, directly observable, overt, not obscure.'" *State v. Saas*, 118 Wn.2d 37, 42, 820 P.2d 505 (1991) (quoting *State v. Taylor*, 83 Wn.2d 594, 596, 521 P.2d 699 (1974)). A defendant must meet a demanding standard to justify withdrawal of the guilty plea. *Saas*, at 42; *Taylor*, at 596.

■ The court shall not accept a guilty plea without determining that it is made with an understanding of the nature of the charge. CrR 4.2(d); *In re Montoya*, 109 Wn.2d 270, 278, 744 P.2d 340 (1987). The constitution does not require that the defendant admit to every element of the charged crime. *In re Hews*, 108 Wn.2d 579, 596, 741 P.2d 983 (1987). An information which notifies a defendant of the nature of the crime to which he pleads guilty creates a presumption that the plea was knowing, voluntary and intelligent. *Hews*, at 596. A defendant is adequately informed of the nature of the charges if the information details the acts and the state of mind necessary to constitute the crime. *Montoya*, at 278; *Hews*, at 595. In addition, a court may examine written statements to ascertain the defendant's understanding of the charges and may rely on the defendant's plea statement. *In re Keene*, 95 Wn.2d 203, 206, 622 P.2d 360 (1980).

■ In this case, Mr. Ness' statement on plea of guilty adequately informed him of the nature of the charges. In relevant part, his statement said:

I have been provided a copy of the Information and am informed and fully understand that I am charged with the crime(s) of: *2nd Degree Burglary, 3 cts*, and the elements of the crime(s) are: *In Spokane County, The Accused did illegally enter a building with the intent to commit a crime therein* . . ..

(Italics indicate passages added in handwriting.) Mr. Ness acknowledged to the court that he had freely signed this

statement. Although at sentencing Mr. Ness orally stated only that he took full responsibility for knowing the property was stolen, this statement does not overcome the presumption that he knew the charges involved burglary. He merely reiterated a fact which is consistent with having committed a burglary. Although Mr. Ness points out his *Alford* plea was equivocal, all *Alford* pleas are inherently equivocal, and this alone does not render an otherwise voluntary and intelligent plea invalid. *Montoya,* at 280.

■ 2. Understanding the Direct Consequences of the Plea. Mr. Ness next contends his plea was not voluntary because he was not informed of all the direct consequences of his plea. In particular, he contends he never would have pleaded guilty if he had known he was giving up his right to bear arms.

CrR 4.2(d) provides in relevant part:

> The court shall not accept a plea of guilty, without first determining that it is made voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea.

A defendant must be informed of all the direct consequences of pleading guilty before the court accepts his guilty plea; however, a defendant need not be advised of all the possible collateral consequences of his plea. *State v. Barton,* 93 Wn.2d 301, 305, 609 P.2d 1353 (1980).

Although Mr. Ness cites several cases for his contention that the distinction between direct and collateral consequences is defined by the amount of discretion involved,[2] that is not the precise test formulated under Washington law. *Barton,* at 305 (quoting *Cuthrell v. Director,* 475 F.2d 1364, 1366 (4th Cir.), *cert. denied,* 414 U.S. 1005 (1973)), points out:

> The distinction between direct and collateral consequences of a plea "turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment".

---

[2]Mr. Ness cites the following cases: *Torrey v. Estelle,* 842 F.2d 234, 236 (9th Cir. 1988); *Barton,* at 305; *Wood v. Morris,* 87 Wn.2d 501, 513, 554 P.2d 1032 (1976); *In re Peters,* 50 Wn. App. 702, 704, 750 P.2d 643 (1988); *State v. Cameron,* 30 Wn. App. 229, 233, 633 P.2d 901, *review denied,* 96 Wn.2d 1023 (1981).

On this point, Mr. Ness minimizes the full extent of his predicament. His appeal is not based on his lost right to bear arms per se;[3] it is based on the fact he received a sentence under a federal statute prohibiting felons from possessing firearms. 18 U.S.C. § 922(g).

Mr. Ness' federal conviction was not a direct consequence of his guilty plea in Washington state court, nor did his federal sentence represent a "definite, immediate and largely automatic effect on the range of the defendant's punishment" imposed by this state. It was not until November 9, 1990, that he was convicted on federal charges — several months after his Washington sentence had been served.

In *Barton*, at 306, the court held that a habitual criminal proceeding was a collateral consequence of a guilty plea for the following reasons:

> [T]he prosecuting attorney has discretion on whether to file habitual proceedings . . . Moreover, defendant's status as an habitual offender is determined in a subsequent independent trial in which defendant has the right to counsel, the right to subpoena and cross-examine witnesses, the right to discovery, and the right to a trial by jury. Any enhancement of defendant's sentence is a collateral rather than a direct result of defendant's guilty plea.

(Citations omitted.)

*Barton*'s reasons apply equally to Mr. Ness' case. A federal prosecutor had to exercise the discretion to file charges against Mr. Ness. As Mr. Ness pleaded not guilty to those charges, his status as a felon in possession of a firearm was determined at an independent trial with the right to counsel, a trial by jury, and all the concomitants of due process. Clearly, that proceeding and its outcome was a collateral consequence the court had no duty to articulate. The loss of one's right to possess firearms is also a collateral consequence of

---

[3]Even if it were, he was adequately informed he had lost his right to bear arms. After other convictions in Idaho, Mr. Ness signed two agreements of supervision, one in 1985 and another in 1986, which attested that he had read, understood, and *accepted*, in relevant part, the following conditions of supervision:

> WEAPONS: I shall not purchase, carry, or have in my possession, any firearm or other weapon as set forth by the U.S. and State statutes.

pleading guilty. *Saadiq v. State*, 387 N.W.2d 315, 325 (Iowa), *appeal dismissed*, 479 U.S. 878 (1986).

In sum, Mr. Ness' pleas were knowing, intelligent, and voluntary. He was adequately informed of the nature of the charges and the direct consequences of pleading guilty.

Mr. Ness next contends there was not a sufficient factual basis to support his Washington guilty pleas. His position is not well taken.

■ CrR 4.2(d) requires the court to determine if there is a factual basis for the plea. In determining whether such a factual basis exists, the trial court need not be convinced of the defendant's guilt beyond a reasonable doubt. *State v. Saas*, 118 Wn.2d 37, 43, 820 P.2d 505 (1991); *State v. Newton*, 87 Wn.2d 363, 370, 552 P.2d 682 (1976). Rather, a factual basis exists if there is sufficient evidence for a jury to conclude that the defendant is guilty. *Saas*, at 43; *Newton*, at 370.

■■ At a plea hearing, the trial court may consider any reliable source of information in the record to determine whether the plea is supported by sufficient evidence. *Saas*, at 43; *State v. Osborne*, 102 Wn.2d 87, 95, 684 P.2d 683 (1984). The prosecutor's factual statement is a source the court may consider. *Saas*, at 43; *Osborne*, at 95.

Mr. Ness entered the type of plea authorized by *North Carolina v. Alford*, 400 U.S. 25, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970) and *State v. Newton, supra*. When a defendant enters an *Alford* plea, the trial court must exercise extreme care to ensure that the plea satisfies constitutional requirements. *In re Montoya*, 109 Wn.2d 270, 277-78, 744 P.2d 340 (1987). An *Alford* plea is valid if "the record before the judge contains strong evidence of actual guilt' ". *Montoya*, at 280 (quoting *Alford*, at 37).

■ It is well established that proof of possession of recently stolen property, if accompanied by " 'indicatory evidence on collateral matters,' " will support a burglary conviction. *State v. Mace*, 97 Wn.2d 840, 843, 650 P.2d 217 (1982) (quoting *State v. Garske*, 74 Wn.2d 901, 903, 447 P.2d 167 (1968)).

> When a person is found in possession of recently stolen property, slight corroborative evidence of other inculpatory circumstances tending to show his guilt will support a conviction.

*Mace*, at 843 (quoting *State v. Portee*, 25 Wn.2d 246, 253, 170 P.2d 326 (1946)). Flight, or presence of the accused near the scene of the crime, is sufficient corroborative evidence to support a burglary conviction. *Mace*, at 843; *Portee*, at 254.

There is no dispute that Mr. Ness was found in possession of recently stolen property. In addition to that fact, the prosecutor's statement provided the following relevant facts:

> Mr. Ness' car was seen at the area of the Fowler burglary on the day it occurred. The license number was written down by a neighbor. It was traced to his motor vehicle. . . .
> Also, Mr. Ness at that point was on work release from Idaho and working in the Rathdrum area, which is in the area of the three burglaries.
> . . . .
> After the third burglary was committed he did not return to work release program in Rathdrum and ultimately was arrested.

The prosecutor's statement of facts indicates Mr. Ness was near one of the burglaries at the time it occurred, worked a short distance from all three burglary locations, and fled upon completion of the third burglary. These facts are sufficient to support the guilty plea.

Mr. Ness next contends that he received ineffective assistance of counsel because counsel failed to inform him of the difference between pleading guilty to possessing stolen property and pleading guilty to second degree burglary, and also failed to familiarize himself with the law regarding possession of stolen property.

Counsel's effectiveness is judged by the 2-prong test enunciated in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, *reh'g denied*, 467 U.S. 1267 (1984). The first prong of the test requires proof of "errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, at 687; *State v. Ray*, 116 Wn.2d 531, 548, 806 P.2d 1220 (1991).

In this case, Mr. Ness' counsel committed no such error. Mr. Ness was charged with three counts of second degree

burglary in Washington and two counts of grand theft by possession in Idaho. Counsel negotiated a sentence near the low end of the standard range, with all three burglary sentences to run concurrently with the two sentences in Idaho. Counsel conceded he was making the best of a bad situation for Mr. Ness. This does not fall below the standard of reasonable professional assistance.

Finally, Mr. Ness argues that the State failed to live up to its end of the plea bargain, in violation of *Santobello v. New York*, 404 U.S. 257, 30 L. Ed. 2d 427, 92 S. Ct. 495 (1971), because his sentence on the Idaho charges was longer than his sentence on the Washington charges.

Mr. Ness misconstrues the meaning of a plea bargain.

> A plea bargain is not a bargain with the judge as to what sentence will be imposed. It is a bargain with the prosecutor as to what the prosecutor's recommendation will be. Once the prosecutor makes the recommendation, the object of the plea bargain is accomplished. . . . A sentencing court's refusal to follow the prosecutor's recommendation does not constitute manifest injustice such as to allow a defendant to withdraw a guilty plea.

*State v. Watson*, 63 Wn. App. 854, 857-58, 822 P.2d 327 (1992).

The record clearly reveals that at Mr. Ness' plea and sentencing hearing, the State recommended a sentence at the low end of the standard range, to run concurrently with the Idaho sentence. This conformed to the plea agreement exactly; the Washington prosecutor fulfilled his part of the plea agreement.[4]

We affirm the trial court's denial of Mr. Ness' motion to withdraw his guilty pleas and deny his personal restraint petition.

MUNSON and KENNEDY, JJ., concur.

Review denied at 123 Wn.2d 1009 (1994).

---

[4]Although the Idaho court imposed an indeterminate sentence above the 22-month sentence Mr. Ness may have expected there, that is an issue in Idaho, not here.