# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48259-2-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| ELMER A. APAEZ-MEDINA, | |
| Appellant. | |

MAXA, A.C.J. – Elmer Apaez-Medina appeals his conviction of second degree assault with a special verdict finding of domestic violence for assaulting his intimate partner, Donna Homan. Apaez-Medina argues that the prosecutor committed misconduct in his closing argument when he (1) said Homan told the truth when she testified, (2) called Apaez-Medina's defense argument ridiculous, and (3) started to read from a letter Homan had written that had not been admitted into evidence.

We hold that the first statement did not constitute misconduct and that Apaez-Medina cannot show that the other conduct prejudiced him. Accordingly, we affirm Apaez-Medina's conviction.

## FACTS

Apaez-Medina and Homan had an intimate relationship and resided together in Shelton. In the early morning hours of June 21, 2015, Apaez-Medina returned home drunk and got into an

altercation with Homan. Apaez-Medina pushed Homan out of the garage and she fell onto the pavement. Apaez-Medina was holding a pipe wrench in one hand and an oyster knife in the other. Homan recalled that Apaez-Medina hit her in the shoulder with the wrench, but did not remember anything else. Homan was under the influence of marijuana and methamphetamine at the time of the fight.

Homan was diagnosed with a broken nose. She also had swelling and bruising around her nose, a small laceration on her lower lip, a large bruise on her chest, bruising and tenderness on her shoulder and upper arm, and an abrasion on her hip and buttocks.

The State charged Apaez-Medina with one count of second degree assault-domestic violence for assaulting Homan. At trial, Homan acknowledged her statement to police that Apaez-Medina broke her nose with his fist and hit her repeatedly. After becoming confused, she gave the following testimony:

> A. All I know is that I certainly didn't break my own nose, and all I know is that I don't want to even be up here.
> Q. Okay.
> A. But I just know *I'm telling the truth*. It might not all be in sequence. I'm sorry. *But I am here trying to tell truth to you*.

Report of Proceedings (RP) at 59 (emphasis added). Homan also stated that she still loved Apaez-Medina.

During cross examination, defense counsel showed Homan a letter that she had written after the incident. Homan testified that she wrote the letter after she had time to think about the fight clearly and that in the letter she wrote that she also was in the wrong. She acknowledged that the letter stated that it would not be right for Apaez-Medina to be convicted. The letter itself was not admitted into evidence.

2

Defense counsel told the jury in his closing argument that the entire case came down to Homan's credibility. Defense counsel argued that Homan lacked credibility because she had difficulty remembering events, she was confused about the timeline of events, and she was under the influence of drugs at the time. Defense counsel also argued that once Homan sobered up after the fight, she wrote in her letter that she did not think it would be right if Apaez-Medina was convicted.

In rebuttal, the prosecutor responded to defense counsel's reference to Homan's inability to recall the order of events:

> That was remarkable, frankly. . . . Because Donna Homan got the order of the events maybe a little mixed up . . . . Because she got the events mixed up and said that I didn't break my own nose, [defense counsel] now is trying to suggest to you that somehow that means she don't - she didn't know who broke her nose, and that, plain and simple, is one of the most *ridiculous* ar--

RP at 107 (emphasis added). Defense counsel objected and moved for a mistrial. The trial court ordered the jury to disregard the prosecutor's comment and reserved ruling on the mistrial. The prosecutor resumed by saying "[T]hat argument is simply not based in reality." RP at 107.

The prosecutor next talked about Homan's credibility:

> You saw Ms. Homan up on the stand, her testimony, and you heard her say she loves the defendant still. Obviously, those feelings overcome, but *she got up there and she told the truth*. What possible motive would she have to not tell the truth, to say - or to tell the truth when she loves the defendant? I mean, why would she - why wouldn't she just say, oh, nothing happened? Of course that's what she would say. *But she's telling the truth even though she loves him*.

RP at 108-09 (emphasis added). Defense counsel did not object to those comments.

Then the prosecutor began to read from the letter written by Homan: "I, Donna Homan, would like for the courts to accept my statement. I hereby now write - I ask for any and all --."

3

RP at 109. Defense counsel objected, stating that the prosecutor was referencing facts not in evidence. The trial court sustained the objection and instructed the jury to disregard the reading.

The jury found Apaez-Medina guilty of second degree assault and also found by special verdict that he and Homan were members of the same household, making the crime domestic violence.

The parties subsequently submitted briefing on Apaez-Medina's motion for mistrial. The trial court heard argument and denied the motion. The trial court then sentenced Apaez-Medina to eight months confinement.

Apaez-Medina appeals his conviction.

ANALYSIS

A.     PROSECUTORIAL MISCONDUCT

Apaez-Medina argues that the prosecutor committed misconduct in his closing argument when he (1) said Homan told the truth when she testified, (2) called Apaez-Medina's defense argument ridiculous, and (3) read from a letter written by Homan that had not been admitted into evidence.[1] We hold that the first statement did not constitute misconduct and that Apaez-Medina cannot show that the other conduct prejudiced him.

---

[1] Apaez-Medina also assigns error to the trial court's denial of his motion for mistrial, but his brief does not contain any argument about how the trial court erred in denying the motion. RAP 10.3(a)(6) requires a brief to contain argument in support of each issue and citations to legal authority. Apaez-Medina's failure to comply with RAP 10.3(a)(6) results in waiver of that issue. *State v. Cox*, 109 Wn. App. 937, 943, 38 P.3d 371 (2002).

1. Legal Principles

To prevail on a claim of prosecutorial misconduct, a defendant must show that in the context of the record and all of the circumstances of the trial, the prosecutor's conduct was both improper and prejudicial. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). During closing argument, the prosecutor is given wide latitude to assert reasonable inferences from the evidence. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012). To establish prejudice, a defendant must show that the misconduct had a substantial likelihood of affecting the jury's verdict. *State v. Allen*, 182 Wn.2d 364, 375, 341 P.3d 268 (2015).

When the defendant fails to object to the challenged portions of the prosecutor's argument, he or she is deemed to have waived any error unless the prosecutor's misconduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice. *State v. Emery*, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012). The defendant must show that (1) no curative instruction would have eliminated the prejudicial effect, and (2) the misconduct resulted in prejudice that had a substantial likelihood of affecting the verdict. *Id.* at 761.

2. Comment on Credibility

Apaez-Medina argues that the prosecutor committed misconduct by improperly vouching for and commenting on the credibility of a witness when he said that Homan told the truth. We disagree.

Improper vouching occurs if the prosecutor places the prestige of the government behind the witness. *State v. Robinson*, 189 Wn. App. 877, 892-93, 359 P.3d 874 (2015). However, there is a difference between the prosecutor's personal opinion, as an independent fact, and an opinion based upon or deduced from the evidence. *State v. McKenzie*, 157 Wn.2d 44, 53, 134

P.3d 221 (2006). Misconduct occurs only when it is clear and unmistakable that the prosecutor is not arguing an inference from the evidence, but is expressing a personal opinion. *Id.* at 54.

Here, the prosecutor said that Homan "got up there and she told the truth" and that "she's telling the truth even though she loves him." RP at 108-09. Although those comments address Homan's credibility, they do not necessarily express the prosecutor's personal opinion. Homan testified, "But I just know I'm telling the truth. It might not all be in sequence. I'm sorry. But I am here trying to tell truth to you." RP at 59. And later she testified that she still loved Apaez-Medina. Therefore, the prosecutor was arguing inferences from Homan's express testimony. We hold that the prosecutor's comment was not improper.

Accordingly, we reject Apaez-Medina's prosecutorial misconduct claim based on the prosecutor stating that Homan told the truth.

3. Calling the Defense Argument "Ridiculous"

Apaez-Medina argues that the prosecutor committed misconduct because referring to defense counsel's argument as ridiculous essentially equated to an expression of the prosecutor's opinion that Apaez-Medina was guilty. We hold that even if the prosecutor's statement was improper, Apaez-Medina cannot show prejudice.

It is improper for a prosecutor to express an independent, personal opinion as to the defendant's guilt. *McKenzie*, 157 Wn.2d at 53. Stating that the defense's argument is ridiculous is not necessarily the same as stating that the defendant is guilty. But even the State recognizes that the prosecutor probably should have used a different term.

In any event, Apaez-Medina objected to the comment, and the trial court instructed the jury to disregard the comment. We presume that jurors follow the court's instructions. *Emery*, 174 Wn.2d at 766. Therefore, Apaez-Medina cannot show that the comment prejudiced him.

Accordingly, we reject Apaez-Medina's prosecutorial misconduct claim based on the prosecutor calling defense counsel's argument ridiculous.

4.    Reading from Homan's Letter

Apaez-Medina argues that the prosecutor committed misconduct by starting to read from Homan's letter because the letter was not in evidence. We hold that even if the prosecutor's conduct was improper, Apaez-Medina cannot show prejudice.

It is improper for a prosecutor to reference in closing argument facts not admitted as evidence during the trial. *Glasmann*, 175 Wn.2d at 704-05. Here, the prosecutor read from only the beginning of the letter, and the portion he read did nothing more than establish the fact that Homan had written the letter – a fact that was already in evidence. But it is improper to actually read from a document that is not in evidence. *See id.*

However, the brief portion of Homan's letter that the prosecutor read had little likelihood of affecting the jury's verdict. First, Homan's testimony had already established that she wrote the letter and stated the general contents of the letter. Second, the brief portion of the letter read by the prosecutor did not contain any significant information. It simply showed that Homan had written the letter, which her testimony already had established. Third, the trial court sustained Apaez-Medina's objection and instructed the jury to disregard what the prosecutor read from the letter. Again, we presume that jurors follow the court's instructions. *Emery*, 174 Wn.2d at 766.

Therefore, Apaez-Medina cannot show that the prosecutor's reading from the letter was prejudicial.

Accordingly, we reject Apaez-Medina's prosecutorial misconduct claim based on the prosecutor starting to read Homan's letter.

B.      CUMULATIVE ERROR

Apaez-Medina argues that, even if we find that none of the prosecutor's comments from his rebuttal amount to misconduct, when taken as a whole the comments amount to cumulative error requiring reversal. We disagree.

Under the cumulative error doctrine, we may reverse when a prosecutor makes multiple improper comments that together have a combined prejudicial effect that cannot be cured by any series of instructions. *State v. Walker*, 164 Wn. App. 724, 737-38, 265 P.3d 191 (2011).

Here, the combined prejudicial effect of the three comments that Apaez-Medina alleges were misconduct is minimal. As discussed above, the prosecutor's comment about Homan's credibility was not improper. And the trial court instructed the jury to disregard both the prosecutor's comment that the defense's argument was ridiculous and what the prosecutor read from Homan's letter. We have no reason to believe that the jury was incapable of following those two curative instructions. And what the jury was instructed to disregard were insignificant statements in the context of the entire trial.

Accordingly, we hold that the prosecutor's comments did not amount to cumulative error.

CONCLUSION

We affirm Apaez-Medina's conviction.

No. 48259-2-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_Mxa, A.C.J._
MAXA, A.C.J.

We concur:

_Lee, J._
LEE, J.

_Melnick, J._
MELNICK, J.