# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In the matter of the Marriage of:<br><br>LINDA KAY HAMMELMAN-BELD,<br><br>          Appellant,<br><br>   v.<br><br>SCOTT BELD,<br><br>          Respondent. | No.  57509-4-II<br><br><br>UNPUBLISHED OPINION |

PRICE, J. — Linda Hammelman[1] appeals the superior court's orders related to finding her in contempt and imposing sanctions, including five days of jail time.  Hammelman raises numerous assignments of error.  Hammelman's former husband, Scott Beld, requests attorney fees on appeal.  We affirm the superior court and deny Beld's request for attorney fees.

## FACTS

In November 2021, the superior court entered a final divorce order dissolving the marriage between Hammelman and Beld.  The final divorce order noted that Beld had requested a restraining order and that a final restraining order had been entered in July.  The final restraining order prohibited Hammelman from disturbing Beld's peace; going within 500 feet of Beld's home or workplace; assaulting, harassing, stalking, or molesting Beld; following, keeping under physical

---

[1] Although the case caption identifies the appellant as Linda Hammelman-Beld, the record indicates the appellant has identified herself as Linda Hammelman.  Accordingly, we refer to the appellant as Linda Hammelman.

or electronic surveillance, cyberstalking, or using telephonic, audiovisual, or other electronic means to monitor the actions, locations, or wire or electronic communication of Beld; or having any contact whatsoever, in person or through others, by phone, mail, email, or any means, directly or indirectly with Beld.

The parties owned two pieces of real property—one in Washington and one in California. The superior court ordered both properties to be sold with the net proceeds divided equally between the parties. The superior court also ordered that the parties share equally the tax liability on the sale of the California property; however, because the California property was titled in Hammelman's name the superior court ordered:

> all taxes on the sale will be reported to the [Internal Revenue Service (IRS)] under her name. Her true tax consequences for 2021 will not be known until 2022. Therefore, $75,000 from the sale of the California home shall be held in [Hammelman's] attorney's trust account for [Hammelman's] 2021 taxes related to the California home. Any deficiency or surplus after payment of actual taxes shall be split equally.

Clerk's Papers at 29. The order also required the parties to sign any documents necessary to effectuate the terms of the superior court's orders.

In February 2022, Hammelman's attorney filed a notice of intent to withdraw. Because Hammelman's attorney held the $75,000 sale proceeds from the sale of the California property in their trust account, they also filed a motion to deposit the funds with the court clerk. A hearing on the motion was held on March 18. The superior court granted the motion and entered an order allowing the $75,000 to be deposited with the court clerk.

At the hearing, Beld also raised issues related to Hammelman's refusal to sign endorsements on the escrow checks from the sale of the parties' properties. After hearing from

both parties, the superior court ordered Hammelman to sign the escrow checks. The superior court also entered a written order requiring Hammelman to sign the escrow checks by the next court appearance or Hammelman would be held in contempt.

At the next hearing, Beld outlined numerous continuing issues related to the signing and depositing of the escrow checks. Beld also informed the superior court that, since his mother's recent death, Hammelman had been harassing him. The superior court expressed concern about Hammelman's behavior and suggested Beld file a motion for contempt if he wanted to further address the issues.

On April 22, Beld filed a motion for contempt based on Hammelman's conduct related to multiple things, including the escrow checks, a phone call Hammelman made to a family friend after Beld's mother died, and numerous posts Hammelman made to social media websites that were critical of Beld. After several hearings and continuances, Beld's motion for contempt was heard in July. The superior court found that Hammelman was in contempt for failing to sign the escrow checks and for violating the restraining order. The superior court reserved a ruling on Beld's request to impose jail time as a sanction for violating the restraining order.

While the contempt proceeding was pending, Hammelman filed a petition for a protection order against Beld under new cause number 22-2-07548-06. At an ex parte hearing in front of a different judicial officer, Hammelman managed to obtain a temporary protection order. After Beld

notified the superior court about this temporary order that Hammelman obtained from the other judicial officer, the superior court held a hearing and dismissed the temporary protection order.[2]

On September 22, after multiple additional continuances, the superior court held a hearing on whether to impose jail time as a contempt sanction for Hammelman's violation of the restraining order. Ultimately, the superior court sanctioned Hammelman to five days in jail, a $100 fine, and a total of $5,500 in attorney fees and costs awarded to Beld. The superior court ordered that the attorney fees be paid from Hammelman's portion of the $75,000 still being held by the court clerk.

Hammelman appeals.

## ANALYSIS

Hammelman raises seven assignments of error. Beld requests attorney fees on appeal. For the reasons explained below, we affirm the superior court and do not award Beld attorney fees.

### A. HAMMELMAN'S ASSIGNMENTS OF ERROR

First, Hammelman assigns error to the superior court's ruling that ordered Hammelman to sign the escrow checks. Hammelman seemingly argues that the superior court's ruling was based on bias against Hammelman and that the superior court violated the appearance of fairness doctrine. Under the appearance of fairness doctrine, a judge must be both impartial and appear impartial. *State v. Gamble*, 168 Wn.2d 161, 187, 225 P.3d 973 (2010). To overcome the

---

[2] It appears that the superior court dismissed the temporary order but allowed Hammelman to have a hearing on her petition for a protection order. The hearing was later held in front of a superior court commissioner. Apparently, Hammelman filed a motion to recuse the superior court judge hearing the family law matter and, although the judge disagreed that there was a reason for her recusal, the judge agreed to assign the petition for a protection order to a superior court commissioner.

presumption that a superior court judge acts without bias or prejudice, the party raising the challenge must identify specific facts raising at least a suspicion of bias or partiality, such as a personal or pecuniary interest in the outcome of the proceedings. *Tacoma S. Hosp., LLC v. Nat'l Gen. Ins. Co.*, 19 Wn. App. 2d 210, 218, 494 P.3d 450 (2021), *review denied*, 198 Wn.2d 1041 (2022); *Tatham v. Rogers*, 170 Wn. App. 76, 96, 283 P.3d 583 (2012). Hammelman provides no specific allegations demonstrating that the superior court had an interest in the case that would overcome the presumption of impartiality.

Further, Hammelman fails to allege how the superior court may have abused its discretion in ordering her to sign the escrow checks. The superior court "abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." *In re Marriage of Littlefield*, 133 Wn.2d 39, 46, 940 P.2d 136 (1997). Here, the final orders in the dissolution required the parties to sign any documents required to effectuate the terms of the property distribution orders. Hammelman has not shown that signing the escrow checks from the sales of the properties was unnecessary to effectuate the distribution of funds from the sales of the parties' properties as provided for in the dissolution orders. Thus, Hammelman has failed to show that the superior court abused its discretion in ordering her to sign the escrow checks.

Second, Hammelman assigns error to the superior court "practicing law from the bench" while threatening Hammelman with being taken into custody. Br. of Appellant at 11. Hammelman cites to only an American Bar Association rule to support her assignment of error. However, Hammelman cites to no authority adopting this rule as part of the Code of Judicial Conduct (CJC). *See In re Keenan*, 199 Wn.2d 87, 93, 502 P.3d 1271 (2022) (The CJC governs judicial conduct in Washington.). Further, we do not enforce the CJC or regulate judicial ethics. *See id.* at 93-94 (The

CJC investigates complaints against judicial officer, conducts hearings, and makes recommendation for discipline to the Supreme Court; the ultimate decision regarding judicial discipline rests with our Supreme Court.). Accordingly, we reject this assignment of error.

Third, Hammelman assigns error to the superior court's ruling finding her in contempt for failing to sign the bank escrow checks. Here, Hammelman's attempt at argument contains only factual assertions, many of which are not supported with citation to the record. *See* RAP 10.3(a)(6) ("The argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record."). Hammelman has failed to present any argument or citation to legal authority supporting her assignment of error. *See* RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992); *State v. Cox*, 109 Wn. App. 937, 943, 38 P.3d 371 (2002). Accordingly, we do not address this assignment of error.

Fourth, Hammelman assigns error to the superior court imposing sanctions of five days' jail time. Per the superior court's order, Hammelman was released from custody the morning of Monday, September 26, 2022. "We generally decline to address moot issues." *State v. Shreve*, 28 Wn. App. 2d 785, 789, 538 P.3d 958 (2023). An issue is moot if a court can no longer provide effective relief. *See Maldonado v. Maldonado*, 197 Wn. App. 779, 790, 391 P.3d 546 (2017). Because Hammelman has already been released from custody, we cannot provide effective relief. Therefore, this issue is moot.

Fifth, Hammelman assigns error to the superior court's ruling dispersing funds from the court registry to pay Beld's attorney fees. Hammelman notes that the funds deposited with the court clerk were originally held to pay taxes related to the sale of the California property.

6

However, Hammelman provides no argument or citation to legal authority establishing that it was error for the superior court to later determine a portion of the funds should be distributed to pay Beld's attorney fees resulting from Hammelman's contempt. Accordingly, we do not address this issue. *See* RAP 10.3(a)(6); *Cowiche Canyon Conservancy*, 118 Wn.2d at 809; *Cox*, 109 Wn. App. at 943.

Sixth, Hammelman assigns error to the superior court "finding harrassement [sic] in case #22-2-07548-06 as she accepted filed recusal under RCW 4.12.050 on 7-19-2022 to Commissioner Sasser." Br. of Appellant at 12. This appeal is limited to the orders designated in the notice of appeal: order requiring signature (Mar. 18, 2022), order of contempt (Sept. 21, 2022), and contempt hearing order (Sept. 21, 2022). All of the appealed orders were entered in Clark County Superior Court Cause Number 19-3-01866-06. An assignment of error to a finding in the case under cause number 22-2-07548-06 is outside the scope of this appeal. *See* RAP 2.4. Accordingly, we do not address this assignment of error.

Seventh, Hammelman assigns error to the superior court's finding that Hammelman violated the restraining order. However, Hammelman does not include any argument or citation to authority attempting to support this assignment of error at all. Accordingly, we do not address it.

## B. BELD'S REQUEST FOR ATTORNEY FEES

Beld requests attorney fees under RAP 18.1 and RCW 7.21.030(3). Under RAP 18.1, we will award attorney fees if applicable law entitles a party to an award of attorney fees. RCW

No. 57509-4-II

7.21.030(3) gives the court discretion to award attorney fees related to a contempt action. Under the circumstances of this case, we do not award attorney fees to Beld.[3]

CONCLUSION

We affirm the superior court's orders and deny Beld's request for attorney fees.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

MAXA, P.J.

GLASGOW, J.

---

[3] On June 6, 2025, Hammelman filed a financial affidavit, which included a request for costs and fees if she prevailed on appeal. RAP 18.1, Affidavit of Fees and Expenses Per Rule 18.14 (June 6, 2025) at 2. Because Hammelman does not prevail on appeal, there is no basis for awarding her attorney fees.